[No. 23224.  Department One.  July 23, 1931.]

THE STATE OF WASHINGTON, *Respondent*, v. J. D. BANTAM, *Appellant*.[1]

*LeRoy McCann*, for appellant.

*J. A. Adams*, for respondent.

[1]Reported in 1 P. (2d) 861.

TOLMAN, C. J.—This is an appeal from a judgment of guilty of the crime of bootlegging.

A number of assignments of error have been made, but only two are argued: (1) That the court erred in denying a motion to suppress evidence; and (2) that it was error to deny appellant's motion for a dismissal at the close of the state's case.

The appellant's argument is directed chiefly to the first assignment, which seems to be the only serious question in the case.

Prior to the trial on the merits, and in a timely manner, appellant presented a motion to suppress evidence, upon the grounds of the absence of a warrant authorizing the arrest and search and the want of probable cause for making the arrest and search without a warrant. This motion was supported by the affidavit of the appellant and another. It was controverted by the affidavits of the arresting officer and another, and in rebuttal the appellant produced the affidavits of himself and a number of other persons. The gist of the purported facts thus presented to the court will be presently noticed, but first it would seem to be well to determine the rule by which the facts are to be considered and weighed.

There are two recent cases in this court bearing upon this question, each containing expressions which must be given effect if possible. The first case, and the authority upon which the appellant chiefly relies, is *State v. Knudsen,* 154 Wash. 87, 280 Pac. 922, where, after an exhaustive review of the authorities, both state and Federal, it was said:

"In the case at bar, under the constitution and the authorities, the anonymous information conveyed to the law enforcement officers did not of itself afford a lawful basis for the arrest of appellant and the search

of his automobile without warrants authorizing such action.''

Of course, that statement must be considered in the light of the facts disclosed by the opinion in that case, but at the most it can only mean that mere anonymous information, unsupported by other facts then within the knowledge of the officer or learned by subsequent investigation, is not of itself sufficient to constitute reasonable and probable cause. That being so, the converse would seem to follow: That such anonymous information, supported by other facts then known to the officer or subsequently learned by investigation, which all tended to verify and confirm the anonymous information, would, if they produced a reasonable belief and an honest conviction that the law was being violated, be reasonable cause and sufficient to warrant the arrest and search without warrant.

The other recent case is that of *State v. Kinnear,* 162 Wash. 214, 298 Pac. 449, where, after reciting the facts in considerable detail, the court said:

"Therefore, it is important to inquire as to Clark's state of mind immediately prior to and at the time of the search, as to whether he had reasonable and probable cause to believe liquor was concealed in the plane. He admits he had no prior information concerning the appellant; admits he had never heard of him previously; admits he could not see into the cockpit; admits it was a common practice to have the front cockpit of an airplane covered, 'particularly when it is raining'; admits Scott did not 'wave his hand' at Kinnear 'nor did he do anything else that looked suspicious.' But his real state of mind is disclosed on re-direct examination:

" 'By Mr. Denney: Q. Did you believe from the things you had seen there and the conversation with this man that there was liquor in the plane or something unlawful was being carried on? A. *I don't*

*know just what I did believe about it, to be honest and truthful with you.'*

"No magistrate would be justified to issue a warrant under such circumstances. Probable cause must be shown before a warrant will issue. Under the facts here established, probable cause was not shown. The law requires reasonable and probable cause on the part of officers to justify them in making a search without a warrant."

This expression of the views of the court seems to fit in to what was said in the *Knudsen* case, and, from the two, the true rule to be applied seems to be fairly obvious. We now state that rule to be as follows: No faithful and vigilant officer is justified in closing his ears to anonymous information and rejecting it without investigation as being unworthy of his notice. It is the duty of every such officer, in enforcing the law, to listen carefully to all such anonymous information; and, if it is supported by his prior knowledge of the facts or by subsequently learned confirmatory facts which reasonably may, and which do, produce in his mind an honest belief that the law is being violated, then he has reasonable and probable cause to act, and he should act accordingly, notwithstanding the character of the information which first caused him to investigate.

Coming now to the particular facts produced and submitted to the trial court and the motion to suppress, we find that all were produced in affidavit form and no witness was subjected to cross-examination. In many respects there is a sharp conflict in the evidence. Appellant and the man Williams arrested with him, in their affidavits detailed their approach to the place of arrest; their arrest without a warrant or cause assigned; their being then searched for weapons; that at that time there was no visible evidence of liquor being in their possession or in the automobile occupied

by them; that the arresting officer took them to the police station and there, without their consent, searched them and their automobile.

The affidavits of the police officers, since they disclose the basis upon which they acted, are for greater certainty set forth in full, as follows:

"R. A. Bishop, being first duly sworn on oath, deposes and states: That I am one of the officers mentioned in the affidavits of the defendants, J. D. Bantam and Jack Williams; that on the evening of September 5, 1929, along about 9:30 p. m. in the regular course of my duties as a police officer of the city of Wenatchee, I stopped in at Shelton's poolroom, on Orondo avenue; I noticed the two defendants, Bantam and Williams, in conversation with Francis Sullivan, Harry Slingsby, and Ted Dougherty. These five men were talking earnestly in the poolroom, and aroused my suspicions by their actions and the manner of conversing, I having known that the three last mentioned men have been, for some time, involved in liquor transactions in the city of Wenatchee. During their conversation, they noticed me observing them, and they walked out of the poolroom on to the sidewalk, and renewed their conversation. I followed them out, and right by the door of the poolroom overheard a part of their talk. Williams and Bantam had their backs turned toward me, and they couldn't see me standing there. Sullivan and Slingsby were standing on the curb towards the poolroom, and Dougherty stood to one side talking to them, a few steps away. I overheard Bantam remark to the other four that they would be in between eleven and one. I then proceeded to the police station, and, while on duty there, received a telephone call from an unknown person, who informed me that the defendant, J. D. Bantam, driving a Ford coupe of the description of the car in which they were later arrested, would leave Quincy and arrive in Wenatchee, crossing the Columbia river bridge with seventy gallons of liquor, some time between the hours of eleven and one a. m. I asked him who he was, and for further details, and he

told me that if the tip was any good to take it, that he didn't want to reveal his identity and go any further.

"Officer Carl Morris was on the street on duty. I called him on the 'phone, got him up to the office, and explained to him what I had observed and been advised of, as related, and we together went down and got officer John Sousley, and advised him of our information, and the three of us proceeded to the west end of the Columbia river bridge, and waited about thirty minutes for the arrival of the car of the description given us by telephone, being driven by the defendant Bantam. We had been advised workmen were repairing the west end of said bridge, and all automobiles passing over the same were requested to come to a full stop at that point, and we realized that this car would have to stop there, so that is where we awaited its arrival.

"While awaiting the arrival of said car, Art Boddy, sheriff of Douglas county, drove by in company with deputy Schmidt. Recognizing them, we stopped them. I got in the car and rode a short distance with them, and said to Mr. Boddy: 'We probably are waiting on the same case,' and he said to me: 'Yes, we have been down around Quincy. We are looking for them on the highway.' Schmidt said, 'You have anything you would be able to recognize the car by?' and I said, 'Yes, the spotlight on the driver's side,' and he said, 'Yes, that's right.' Boddy said, 'We are going up town to get a cup of coffee and a little lunch, and will be back.' They wanted me to wait at the bridge until they got back. I said: 'You will have the first chance to pick the car on the other approach at the east end of the bridge, and in case you do, call our office and the desk man there will call us in, and we wouldn't have to wait longer.' About fifteen minutes later, Sheriff Boddy and his deputy came back across the bridge, and stopped and called me over to the car. Boddy said he had other business in Waterville, and he would go on in, and leave the car to us.

"Realizing the situation, that the car would have to stop on account of the work being done at the bridge, I went up town with officer Sousley, to leave him on

duty, expecting to return shortly, and help officer Morris if the car arrived. During my absence the car arrived, and officer Morris brought the defendants and the car to the police station about 1 a. m. On the way up I met them in front of the Red Apple Cafe, on Wenatchee avenue. Upon arriving there, we asked them for permission to search the car, and they told us to go ahead. Upon searching the car we found, instead of seventy gallons of whiskey, forty gallons in four full wooden caskets, all concealed in the back compartment of said automobile. The said automobile answered exactly the description thereof, previously given me over the telephone, particularly the spot-light on the driver's side, which was given as a distinguishing mark. The defendant, Bantam, was dressed exactly as my informer told me that he would be dressed.''

''I, Carl Morris, being first duly sworn on oath, depose and state: That I am now, and was at all times herein mentioned a police officer in the city of Wenatchee, and the officer mentioned in the affidavits of the defendants filed herein, and in the affidavit of officer Bishop. That I have heard dictated the affidavit of officer Bishop, know the contents thereof, and the statements therein made are true and correct in all respects, insofar as they refer to advice given by him, and my action in connection with the arrest of the defendants.

''In addition thereto, I wish to state at the time officers Bishop and Sousley left the west end of the Columbia river bridge for up town, they left me there alone to watch for defendants' automobile, the description of defendant Bantam and the car having previously been given me by officer Bishop. During the absence of said officers, the car arrived at the west end of the bridge and stopped on account of the work being done at the approach. I stepped up to the driver's side of the car, recognizing him and the car by the descriptions given, and asked him what his name was. He told me, 'Jack Bantam.' I then, knowing I had the right car and man, asked them to get out of the car, both defendants occupying the same, and looked them over for weapons. Seeing or finding none, I got back into the car with them and had them drive

to the police station. We met officer Bishop, as related in his affidavit, and all went to the police station together, where I asked them if we could search the car without a warrant, and the defendant J. D. Bantam said, 'Go ahead.' That said defendants and car arrived at the west end of the Columbia river bridge about 1 a. m., September 6, 1929.

''Upon lifting up the back of the coupe, which was unlocked, we found forty gallons of moonshine whiskey, in four ten-gallon kegs.''

The affidavits produced in rebuttal make a rather strong showing to the effect that officer Bishop was mistaken in his belief that he saw the appellant and Jack Williams at the pool room on the evening preceding the arrest, and rather convincingly indicate that neither one was there at that time or had any part in the conversation which the officer then overheard.

No findings of fact were made touching this issue, but, assuming that officer Bishop was honestly mistaken about the pool room incident, still we think there is an abundant showing of reasonable ground for the belief on the part of the officers that appellant was actually engaged in the commission of a felony at the time of his arrest. Of course, officer Morris was acting under the orders and direction of officer Bishop; and any facts known to the officer in charge who directs an arrest by a subordinate will inure to the benefit of the subordinate; as, in the eye of the law, he was acting upon the facts known to his superior.

One or two of the many reasons which might be mentioned as justifying the arrest and search are the following: Appellant, in appearance, in name, in the description of his automobile and in the time of his arrival at the place of arrest, confirmed fully and exactly the anonymous information; and also the appearance of the sheriff of Douglas county and the information which he gave tended strongly to confirm

the anonymous information. To fail to act under such conditions would indeed be a confession that justice is blind. The motion to suppress was properly denied.

The only other assignment of error argued is based on the refusal of the trial court to grant a motion to dismiss at the close of the state's case. When searched at the police station, the car driven by the appellant was found to contain forty gallons of moonshine whiskey. There was no direct evidence of appellant's purpose in carrying about this quantity of intoxicating liquor. That he, an interested witness, denied that he was carrying it about for the purpose of sale means little; the quantity, together with the statutory presumption, made the question one of fact to be determined by the trier of the facts, and we can not say that on the evidence of the accused alone there is any preponderance in evidence against the conclusion reached by the trial judge, to whom the case was submitted without a jury.

Finding no error, the judgment is affirmed.

HOLCOMB, PARKER, MAIN, and MITCHELL, JJ., concur.