[No. 37036.  En Banc.  July 22, 1965.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIAM HOWARD McCLUNG, *Appellant.*\*

*Reported in 404 P.2d 460.

*Moschetto, Alfieri & Driano* and *Michael R. Alfieri,* for appellant.

*Charles O. Carroll* and *Richard M. Ishikawa,* for respondent.

HAMILTON, J.—Defendant was arrested, charged, convicted, and sentenced on two counts of armed robbery.

On appeal, he makes eight assignments of error, which in turn fall into four categories: He contends that the trial court erred in admitting into evidence (1) exhibits obtained as the result of an alleged unlawful arrest and search; (2) testimony regarding certain articles discovered during the search; (3) exhibits which were not properly identified; and (4) statements purportedly made under duress and after denial of an opportunity to obtain counsel.

Briefly, a chronology of the salient events is: On June 29, 1962, one unmasked man, brandishing a knife, held up a drugstore operated by John Walters at 701 Olive Way, in Seattle, Washington. Money and narcotics were taken and Mr. Walters was left bound with adhesive tape. He released himself and called the police to whom he described the man and the articles taken. Investigation about the premises resulted in the discovery of a knife and a business card on the floor. The card contained a hand printed statement on the back reading: "Am sick and need medicine— Give me Daladid and Morphine Sulphate and Demeeral or I will Kill you Now." The knife and card were marked for identification as evidence and turned over to the police property room.

On July 13, 1962, a drugstore operated by Ronald C. Gardner at 1001 Broadway, Seattle, was held up at gunpoint by two unmasked men. Mr. Gardner and his assistant, Miss Ruby Ann Gordon, were bound with adhesive tape and money and narcotics were taken from the store. The police were notified of the robbery and, upon arrival at the scene, were given a description of the men and the

items taken. Sergeant M. M. Matheson, of the Seattle Police Department, was a member of the detail which was sent to the scene.

On July 16, 1962, Sergeant Matheson received an anonymous telephone call advising him that the two men who held up the Gardner Pharmacy were selling narcotics from a 1951, green, 4-door Chrysler sedan, license No. AMW 287. The caller described the men. The descriptions tallied with the descriptions given by Mr. Gardner and Miss Gordon, and Sergeant Matheson alerted the appropriate detail and otherwise disseminated the information to the police department.

On July 17, 1962, at approximately 1:30 p. m., Officers Fridell and Goad, while on routine motor patrol, observed the described vehicle parked in the 1400 block of East Madison Street and noted a man and woman leave the vehicle. They notified Sergeant Matheson, followed the man and woman for a short distance, and then parked their vehicle near the subject automobile. At that time, they observed the defendant seated in the right front seat of the vehicle, whereupon Officer Fridell approached on foot and inquired as to the ownership of the vehicle and defendant's identity. Defendant supplied the requested information, indicating that the automobile belonged to one Leo Bankston. The descriptions of the defendant and the other man appeared to Officer Fridell to match the descriptions of the Gardner robbery participants. The officers then drove around the block in an effort to locate the other man and, upon their return, again parked in the 1400 block to maintain surveillance of the Chrysler vehicle and defendant. They observed the defendant leave the automobile, cross the street and enter a restaurant, following which Sergeant Matheson arrived. Sergeant Matheson and Officer Fridell thereupon went to the restaurant where they learned the defendant had gone to the tavern next door. They located defendant locked in the washroom of the tavern and Sergeant Matheson, after directing him to unlock the door and come out, observed him and, noting the similarity of

his description to that of one of the robbery participants, placed him under arrest. The scene of the arrest was across the street and within a distance of 150 feet from the Chrysler.

Defendant was placed in the custody of Officer Goad in the patrol car, and Sergeant Matheson and Officer Fridell then proceeded to search the Chrysler automobile. A cigar box containing narcotics was found under the right front seat, and various items, including two hypodermic needles, were found in the trunk. The items found were marked for identification and subsequently turned into the police property room.

Defendant was taken to the police station and booked. He was thereafter interrogated, permitted an opportunity to use the telephone in an attempt to locate and contact his brother with whom he had been living, and identified in a line-up by Mr. Walters and Mr. Gardner. Miss Gordon identified certain of the drugs and narcotics from the cigar box found in the Chrysler as items taken during the robbery of the Gardner Pharmacy.

Defendant was formally charged with the robberies, counsel was appointed to represent him, a plea of not guilty was entered, and trial and conviction ensued.

At the commencement of trial, defendant, through his counsel, moved to suppress the drugs and narcotics discovered in the search of the Chrsyler, and identified by Miss Gordon as coming from the Gardner Pharmacy, upon the ground that the vehicular search was unlawful. The trial court, after hearing the testimony of Sergeant Matheson and Officer Fridell and argument of counsel, determined that the arrest was based upon probable cause and that the search was contemporaneous and incidental thereto. The motion to suppress was denied.

During presentation of the state's case, the knife and card discovered at the Walters Pharmacy were identified by Mr. Walters and an investigating officer, and certain of the drugs and narcotics seized during the search of the Chrsyler were identified by Miss Gordon. Possession and care of

the respective items in the police property room from the time of their discovery until trial was traced. The items were admitted in evidence over defendant's objections as to sufficiency of their identification, and in preservation of his challenge to the lawfulness of the search of the vehicle. Also admitted into evidence, over defendant's objection as to materiality, was the testimony of Officer Fridell in which he stated that, during the search of the trunk of the automobile, the officers discovered a brown paper bag containing a spool of cotton, a spoon, and two hypodermic needles.

After the state rested its case, the defendant took the stand. On direct examination he denied any participation in the crimes charged, any knowledge thereof, and any knowledge of the drugs and narcotics found in the automobile or how they got there. On cross-examination, the state undertook to query the defendant as to whether he had made certain statements to the police relative to his knowledge of the crimes involved and who had placed the narcotics in the Chrysler. The defendant objected and challenged the voluntariness of any purported statements, asserting that he had been denied counsel and had been physically abused. A hearing upon defendant's challenge was held in the absence of the jury, following which the trial court permitted the state to question defendant about the statements in issue. The defendant steadfastly denied making the alleged statements to the police. Thereafter, on rebuttal and by way of impeachment, the state called the interrogating officer who testified that the defendant stated he had obtained the narcotics in issue from another vehicle and placed them in the Chrysler, and further that he knew who had committed the robberies but would not divulge that information. Otherwise, the officer testified, the defendant denied any participation in the robberies.

Defendant's first contention embraces a two-prong attack upon the admissibility of the drugs and narcotics seized in the search of the Chrysler vehicle: (a) The legality of the arrest, and (b) the incidence of the search.

■ We have but recently reiterated the general rules applicable to arrests without a warrant and searches incidental thereto. In *State v. Darst,* 65 Wn.2d 808, 811, 399 P.2d 618 (1965), we said:

> If an officer believes *and* has good reason to believe that a person has committed, or is about to commit a felony, he may arrest without a warrant. This is but another way of saying that an officer must have probable cause to believe that a felony has been or is about to be committed and that the person arrested committed or is about to commit it. *State v. Jack,* 63 Wn. (2d) 632, 388 P. (2d) 566; *State v. Maxie,* 61 Wn. (2d) 126, 377 P. (2d) 435; *State v. Hughlett,* 124 Wash. 366, 214 Pac. 841, similarly as to a citizen's arrest. Even a strong belief held in good faith if unsupported by the circumstances will be insufficient to make a search valid. *Beck v. Ohio,* 379 U. S. 89, 13 L. Ed. (2d) 142, 85 S. Ct. 223. The probable cause essential to support an arrest without a warrant is a belief based upon facts within the knowledge of the arresting officer, persuasive enough to convince a judge that a cautious but disinterested man would also believe the arrested person guilty. *State v. Smith,* 56 Wn. (2d) 368, 353 P. (2d) 155; *Henry v. United States,* 361 U.S. 98, 4 L. Ed. (2d) 134, 80 S. Ct. 168; *Carroll v. United States,* 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790.
>
> If the arrest was lawful, *i.e.,* upon probable cause, then a search of the person, the immediate area and the nearby automobile became lawful. *State v. Jackovick,* 56 Wn. (2d) 915, 355 P. (2d) 976; *Preston v. United States,* 376 U.S. 364, 11 L. Ed. (2d) 777, 84 S. Ct. 881 (1964). Such a search incident to a lawful arrest is permitted to protect the arresting officer from assault by accomplices or hidden weapons and to prevent the destruction of evidence. *Preston v. United States, supra.*

And, with respect to the significance of anonymous information, we commented in *State v. Bantam,* 163 Wash. 598, 600, 1 P.2d 861 (1931), as follows:

> [M]ere anonymous information, unsupported by other facts then within the knowledge of the officer or learned by subsequent investigation, is not of itself sufficient to constitute reasonable and probable cause. That being so, the converse would seem to follow: That such anonymous information, supported by other facts then known to the

officer or subsequently learned by investigation, which all tended to verify and confirm the anonymous information, would, if they produced a reasonable belief and an honest conviction that the law was being violated, be reasonable cause and sufficient to warrant the arrest and search without warrant.

In the instant case, the officers, at the time of the arrest in addition to the anonymous information, knew (1) that the robberies had been committed and narcotics had been taken; (2) that the descriptions given by the victims of the robberies and the anonymous tipster matched, and both tallied with the appearance of the defendant and the other male occupant of the vehicle; and (3) that the description and license number of the vehicle matched with the anonymous information. Under these circumstances, we hold that probable cause existed for the arrest of defendant.

By the second prong of his contention, defendant asserts that, though the arrest may have been lawful, the search of the vehicle, which was across the street and less than 150 feet from the scene of the arrest, was not contemporaneous with and incidental to the arrest. In this respect, defendant perforce relies upon language taken from *Preston v. United States*, 376 U.S. 364, 11 L. Ed. 2d 777, 84 Sup. Ct. 881 (1964), wherein it is indicated that once an accused is under arrest and in custody a search made at another place, without a warrant, is not incident to the arrest for it is too remote in time or place from the arrest. We, too, have recognized and applied the doctrine of the *Preston* case. *State v. Riggins*, 64 Wn.2d 881, 395 P.2d 85 (1964).

We are satisfied, however, that factually the instant case is clearly distinguishable from the *Preston* and *Riggins* cases, *supra*. In each of those cases, the accused had been arrested and taken to the police station, the car impounded, and the search conducted a day or so thereafter. Obviously, there was no danger of any evidence in the vehicle disappearing, nor was there any impediment to impounding the vehicle involved and leisurely procuring a search warrant. Such was not the case here. Here, the accused pro-

fessed to be simply a passenger in a vehicle, the owner of which had wandered away and whose immediate whereabouts was then unknown to the officers or to the accused. Had the officers, under these circumstances impounded or otherwise detained the vehicle of an innocent owner, while they sought a search warrant, and thereafter found nothing, they could well become the target of substantial criticism.

We conclude that the search was neither too remote in time, place, nor circumstances to render it unreasonable. With respect to the distance factor involved, compare *State v. Cyr*, 40 Wn.2d 840, 246 P.2d 480 (1952); *State v. Jackovick*, 56 Wn.2d 915, 355 P.2d 976 (1960); and *State v. Hoffman*, 64 Wn.2d 445, 392 P.2d 237 (1964).

By his second contention, defendant claims error and prejudice in the admission of the testimony of Officer Fridell revealing the items discovered in the trunk of the Chrysler vehicle. Particular attention is focused by the defendant upon the fact that the items uncovered included hypodermic needles. The state offered this evidence, and the trial court admitted it, upon the theory that it tended to show identity, motive and intent. *State v. Goebel*, 36 Wn.2d 367, 218 P.2d 300 (1950); *State v. Vindhurst*, 63 Wn.2d 607, 388 P.2d 552 (1964).

We have carefully reviewed the testimony introduced and agree with the trial court and counsel for the state that such evidence did have probative value upon the issues of identity, felonious intent, and/or motive. Particularly does this become so when it is considered in the light of the hand printed content of the business card found following the robbery of the Walters Pharmacy, together with the testimony of Mr. Walters that the person committing the robbery immediately took a narcotic tablet during the course of removing narcotics from their drawer at the store. While, under the circumstances, this evidence might possibly be considered slightly more prejudicial than probative, we do not deem it so prejudicial as to brand it inadmissible. *Cf. State v. Rossi*, 133 Wash. 497, 233 Pac. 951 (1925); *State v. Taylor*, 159 Wash. 614, 294 Pac. 260 (1930); *State v. Vindhurst, supra.*

Defendant's third contention deals with the admission of the state's exhibits No. 1 (the knife), No. 2 (the business card), and Nos. 17, 18, 19, 20, 22, and 23 (the narcotics and drugs in their bottles, boxes, vials, and pill form). It is his contention that the various witnesses called to identify the exhibits expressed varying degrees of uncertainty in their identification of the exhibits.

Our review of the testimony of the witnesses as it pertained to the exhibits in question convinces us that their testimony was sufficient to warrant admission of the exhibits. The weight to be accorded to their testimony, and the fact that probing cross-examination may have elicited some hesitation on their part, presents a question for the jury.

With his fourth contention, defendant attacks the admission, in rebuttal to his testimony, of the testimony of the interrogating officer relating to statements purportedly made by defendant during interrogation. These statements, it will be recalled, were to the effect that the defendant stated to the officer that he had obtained and placed the drugs in the Chrysler automobile, and that he knew who had committed the robberies in question.

In considering the admissibility of these statements, over defendant's contention that they were involuntary, it is to be borne in mind that (a) the state did not seek to offer these statements into evidence in its case in chief; (b) defendant took the stand and, on direct examination, specifically denied any knowledge of the robberies, the drugs, and how they happened to be in the automobile; and (c) defendant, on cross-examination, specifically denied making any such statements to the interrogating officer, or, for that matter, making any incriminating statements.

Under these circumstances, we are satisfied the challenged evidence comes within the principle of *Walder v. United States,* 347 U.S. 62, 98 L. Ed. 503, 74 Sup. Ct. 354 (1954). *Cf. White v. United States,* 317 F.2d 231 (1963).

As pointed out in the *Walder* case, *supra* (p. 65):

It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is

quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths.

Applying the underlying rationale of the *Walder* decision to the instant case, we find no error in the admission of the challenged evidence, nor any denial of defendant's constitutional rights thereby.

Finally, defendant contends that he was denied his right to employ counsel by virtue of impoundment of $108.85 in his possession at the time of arrest. Although an allegation to this effect was contained in defendant's motion to suppress, heard at the outset of the trial, defendant did not urge the same upon the trial court nor present any evidence or argument in support thereof. Neither does he on appeal point to any facts from which any substantial prejudice can be observed. We find no merit in this contention.

The judgment and sentence is affirmed.

ROSELLINI, C. J., HILL, DONWORTH, WEAVER, OTT, HUNTER, and HALE, JJ., and SOULE, J. Pro Tem., concur.