[Nos. 1130-2; 1131-2.    Division Two.    September 28, 1973.]

THE STATE OF WASHINGTON, *Petitioner*, v. FREDERICK A. CHATMON, *Respondent.*

THE STATE OF WASHINGTON, *Petitioner*, v. JOSEPH H. GRIFFEN, *Respondent.*

*John C. Merkel, Prosecuting Attorney,* and *Ronald A. Franz, Deputy,* for petitioner.

*William J. Kamps* and *David H. Armstrong* (of *Sanchez, Martin & Armstrong*), for respondents.

PEARSON, C.J.—The state seeks writs of certiorari to review orders of the trial court suppressing evidence in two related criminal proceedings which have been consolidated for hearing.

In both cases the defendants were charged with the crime of possession of a controlled substance, in violation of RCW 69.50.401(c). Both defendants were passengers in an automobile which was stopped by officers of the Bremerton police. A search of the vehicle and one of its passengers disclosed a quantity of marijuana.

The trial court granted motions to suppress the evidence gained in the search on the ground that it was obtained as the result of an unlawful search and seizure. We agree.

The facts leading up to the search were undisputed and disclose the following. On March 31, 1973 at approximately 12:30 p.m. an unidentified person, who was not otherwise described, came into the office of the Puget Sound Naval Shipyard Police Department and contacted Officer Dale Bixler. This informer related to Officer Bixler that he had been at the Puget Sound Naval Shipyard Commissary a short time before and had observed a male subject with a hat on bend over. As the subject bent over, his hat fell off and a clear plastic bag containing green vegetable material fell out of his hat. The unidentified individual was certain that the green vegetable material was marijuana. The subject was described as wearing a red shirt and a large black hat. The unidentified informer further related that the suspect entered a yellow Plymouth bearing California license plate number STB 714 and that the yellow Plymouth was occupied by four individuals. The unidentified informer refused to identify himself to Officer Bixler relating that he did not want to "get involved."

At approximately 12:40 p.m. Officer Bixler telephoned the Bremerton Police Department to relate the information which the informer had given him. About 10 minutes later,

Officer Bixler again telephoned the Bremerton Police Department and as he was on the telephone observed and informed the Bremerton police that a yellow Plymouth automobile bearing California license plate number STB 714 was then driving by his office and that there were more than four occupants.

At about 12:54 p.m. the Bremerton police dispatcher notified all field patrol units by radio of the above-stated facts. Within 5 minutes thereafter Officer York discovered the car, but was unable to stop it because he was driving a 3-wheel traffic scooter. However, he radioed for assistance and in response was joined by Officer Anson. Within a few seconds Officer Anson fell in behind the yellow Plymouth, radioed the office of the Bremerton Police Department, and made an inquiry whether there was sufficient cause to stop the vehicle. He received an affirmative reply. At about 1 p.m. Officer Anson stopped the vehicle and, together with Officer York, approached the vehicle.

They noticed five young male occupants—three of whom were wearing large felt hats of various colors. Officer Anson approached the driver's side of the vehicle and asked the driver for his driver's license. Officer York approached the passenger side of the vehicle and in so doing observed that the occupant in the middle of the front seat fit the description of the person who supposedly had marijuana under his hat. Officer York then asked the three passengers wearing the hats to remove them. Two of the three complied immediately and nothing out of the ordinary was observed. The third individual (neither of the two defendants), who was wearing a black hat and a red shirt, appeared to engage in stalling tactics so that he would not have to remove his hat. Officer York once again asked this individual to remove his hat and in response thereto he flipped it backwards and a clear plastic bag containing a green vegetable material fell from underneath his hat into his lap. Immediately Officer York reached into the vehicle and took custody of the baggie.

Thereupon all five occupants of the vehicle were asked to

exit the vehicle and identify themselves. At this time, the individual from whose hat fell the baggie of green vegetable material was placed under arrest for possession of a controlled substance.

Once the occupants had alighted from the Plymouth, Officer York observed on the left side of the rear floor of the vehicle five clear plastic bags containing a green vegetable material which he said were plainly visible from the outside of the car. The defendant, Joseph H. Griffen, had been occupying this area of the vehicle.

In inspecting the vehicle further, Officer York found a white paper bag on the floorboard in the right front area of the vehicle. This bag contained six clear plastic bags of a green vegetable material and was located in the area of the car in which the defendant, Frederick A. Chatmon, had been seated. It was the opinion and belief of Officer York that all the baggies of vegetable material which he found and took into custody contained marijuana.

Once the officers had found in the vehicle the substances which they believed to be marijuana, all five subjects were arrested and taken into custody.

For the same reasoning as was applied by the Supreme Court in *State v. Whitney*, 69 Wn.2d 256, 418 P.2d 143 (1966), we believe that the writ should issue and the matter should be considered on the merits.

The state urges two theories for upholding the validity of the search. The first theory is that the police officers had probable cause to stop the vehicle and make the search. The second is that the "stop and frisk" doctrine enunciated in *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), and expanded by *Adams v. Williams*, 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972), justified the stop and search.

■■■ We consider first the state's contention that probable cause to stop and search existed.[1] Noting at the outset

---

[1]The state concedes that the action of the officers in requesting the occupants to remove their hats was a search. Furthermore, the state does not contend that, under these circumstances, there was a volun-

that if probable cause was present it rested upon the information provided by an unidentified informant, we are accordingly constrained to evaluate the question in light of the standards laid down by the United States Supreme Court in *Aguilar v. Texas*, 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964), and its progeny. *Aguilar* promulgated the constitutional criteria against which an informant's tip must be measured for the purpose of determining the existence of probable cause: a "two-pronged" test which must be satisfied before a warrant may issue or, as in this case, before a warrantless search may proceed.[2] Essentially, in a case such as this, the test requires that there appear some underlying circumstances from which the informant concluded that the contraband was where he claimed it to be, and some further circumstances from which the officer could conclude that the informant was "reliable." *Aguilar v. Texas*, 378 U.S. at 114. *See also Spinelli v. United States*, 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969).

Where an informant supplies information that a suspect is in possession of contraband, and accompanies this account with a wealth of collateral detail which describes the suspect and his movements, an officer who by his observations corroborates the collateral detail may reasonably infer that the information about the crime itself was gained in a reliable way. *See Draper v. United States*, 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329 (1959). In such a situation, the first prong of the *Aguilar* test will be satisfied. *Spinelli v. United States*, 393 U.S. at 417. The *Draper* analysis would likewise support such a determination in this case, given the meticulous description provided to the police and its

---

tary waiver constituting a consent to the search. *See State v. Greco*, 52 Wn.2d 265, 324 P.2d 1086 (1958).

[2] Whether the question is one of probable cause for an arrest or search without a warrant, or a magistrate's consideration of whether a warrant should issue, the analysis is basically the same. *Spinelli v. United States*, 393 U.S. 410, 417 n.5, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969). The general requirement of a search warrant is relaxed where an automobile is involved, as here. *Chambers v. Maroney*, 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975 (1970).

subsequent verification in all but the ultimate particular through their own observations. However, a determination that *Aguilar*'s first requirement was satisfied here need not rest on such an approach. In a case in which the informant personally observes the criminal act (in this case the possession of marijuana), a finding that his information was reliably obtained may be predicated on that fact alone. *United States v. Harris*, 403 U.S. 573, 29 L. Ed. 2d 723, 91 S. Ct. 2075 (1971).

▬ Of more difficulty in this case is the problem presented by *Aguilar*'s second prong—the necessary demonstration of some indicia of the informant's reliability. While it is true that the courts draw a distinction between "professional" and "citizen" informers, relaxing somewhat the necessary showing of reliability as to the latter, *State v. Singleton*, 9 Wn. App. 327, 511 P.2d 1396 (1973), *United States v. Unger*, 469 F.2d 1283 (7th Cir. 1972), some such showing is nonetheless necessary. Although, at least as to the "citizen" informer, there exists no requirement that the police make any showing of *previous* reliability (since present credibility is of course the touchstone), *United States v. Harris, supra,* it is axiomatic under the *Aguilar-Spinelli* rule that the police must ascertain some information which would reasonably support an inference that the informant is telling the truth. As a practical matter, it follows that in the general case information supplied by an anonymous informant (as opposed to one known to the police but merely unidentified) cannot, standing alone, create probable cause.

Our Supreme Court has stated the rule as follows:

[A]nonymous information, unsupported by other facts then within the knowledge of the officer or learned by subsequent investigation, is not of itself sufficient to constitute reasonable and probable cause.

*State v. Bantam*, 163 Wash. 598, 600, 1 P.2d 861 (1931). *See also State v. McClung*, 66 Wn.2d 654, 404 P.2d 460 (1965), and J. Cook, *Constitutional Rights of the Accused; Pretrial Rights* § 37 (1972).

In the present case, the police did not learn such facts by subsequent investigation as would, in combination with those supplied by the informant, raise the level of their suppositions to probable cause. As said by the *Bantam* court:

No faithful and vigilant officer is justified in closing his ears to anonymous information and rejecting it without investigation as being unworthy of his notice. It is the duty of every such officer, in enforcing the law, to listen carefully to all such anonymous information; and, if it is supported by his prior knowledge of the facts *or by subsequently learned confirmatory facts which reasonably may, and which do, produce in his mind an honest belief that the law is being violated,* then he has reasonable and probable cause to act, and he should act accordingly, notwithstanding the character of the information which first caused him to investigate.

(Italics ours.) *State v. Bantam, supra* at 601.

Here the facts learned by the officers through their subsequent observations, while confirmatory of the informant's description of the vehicle and its occupants, were by themselves innocent and could not reasonably raise an inference "that the law was being violated." Hence, the "additional information" creating probable cause contemplated by the *Bantam* test was not adduced here.

Nor are we of the opinion that the confirmation of the collateral detail of the tip by the officers can of itself support a determination as to the anonymous informant's reliability. To hold otherwise would permit a "bootstrapping" of anonymous information to the level of probable cause whenever a wealth of extraneous detail (easily subject to police corroboration) embellishes the report. *See Whiteley v. Warden,* 401 U.S. 560, 28 L. Ed. 2d 306, 91 S. Ct. 1031 (1971).[3]

---

[3]In *United States v. Roman,* 451 F.2d 579 (4th Cir. 1971) and *United States v. Manning,* 448 F.2d 992 (2d Cir. 1971) the internal detail of the informant's tips were said to be of such a nature as to establish their credibility, where such detail was corroborated in all but the ultimate particulars by police observation. In both cases, however, the police possessed some additional information tending to corroborate the pres-

To establish the reliability of a citizen informant, and thus to fulfill the second prong of the *Aguilar* test, it is only necessary for the police to interview the informant and ascertain such background facts as would support a reasonable inference that he is "prudent" or credible, and without motive to falsify. *United States v. Harris, supra.* In making this determination, the police may justifiably assume that the ordinary citizen who has seldom or never reported a crime to the police may, in fact, be more reliable than one who supplies information on a regular basis. *United States v. Harris, supra* (*see also* the dissenting opinion of Harlan, J., 403 U.S. at 599).

In making this evaluation, an ascertainment of the citizen's identity will almost invariably be necessary. However, should the citizen wish to remain anonymous, as here, his reliability could certainly be corroborated by description of him, his purpose for being at the locus of the crime, and the reason for his desire to remain anonymous.[4]

We find on these facts that insufficient indicia of the informant's reliability existed to satisfy *Aguilar* and its successors. Accordingly, we hold there was no probable cause for the search in this case.

■ We turn now to an examination of the state's contention that notwithstanding the absence of probable cause the search was justified under the "stop and frisk" rationale of *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), and *Adams v. Williams*, 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972). These cases permit a brief detention of persons for purposes of limited inquiry upon a

ence of criminal activities. In each case, moreover, the informant, though of previously untested reliability was known by name to the police.

[4]Where eyewitnesses to crime summon the police, and the exigencies are such (as in the case of violent crime and the imminent possibility of escape) that ascertainment of the identity and background of the informants would be unreasonable, the "reliability" requirement might be further relaxed. *Cf. State v. Morsette*, 7 Wn. App. 783, 502 P.2d 1234 (1972). *See also People v. Hoffman*, 45 Ill. 2d 221, 258 N.E.2d 326 (1970), where an arrest was upheld on facts remarkably analogous to those of this case.

well-founded suspicion of criminal activity. *See State v. Gluck*, .7 Wn. App. 811, 502 P.2d 1222 (1972). While we would hold that such an investigative detention may be appropriate upon these facts, *Terry v. Ohio* and *Adams v. Williams* authorize only a limited protective search for weapons in such a situation, "When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, . . ." *Terry v. Ohio*, 392 U.S. at 24. *See Adams v. Williams*, 407 U.S. at 146. There is no indication in this case that the officers had any such belief. The police may not search for narcotics on the pretext of frisking for weapons. *Sibron v. New York*, 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889 (1968). Unless the limited investigation permitted discloses additional facts which would create probable cause, no search not justified by considerations of the officer's safety is proper. To hold otherwise would be to sanction a general search on less than probable cause in direct contravention of the constitutional prohibition.

The orders of suppression are affirmed and the applications for writs of certiorari are denied in both cases.

PETRIE and ARMSTRONG, JJ., concur.