[No. 8135-4-III. Division Three. May 10, 1988.]

THE STATE OF WASHINGTON, *Appellant,* v. RAY A. CARVER, ET AL, *Respondents.*

*Paul A. Klasen, Prosecuting Attorney,* and *Peter Wales, Deputy,* for appellant.

*John Knodell,* for respondents.

McINTURFF, C.J.—The State appeals a superior court order which suppressed evidence of controlled substances seized in a search of Ray Carver's and Glenda Ryan's residence. We hold the informants' tip, on which the search warrant was based, satisfied the *Aguilar–Spinelli* test. *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969); *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964). The fact the informants were children, by itself, does not negate their reliability nor the sufficiency of the basis for their allegation.

On July 24, 1986, a magistrate signed a warrant authorizing the search of the premises located at 56 Pioneer Avenue Southeast, Ephrata, Washington, for marijuana, any other controlled substance, drug paraphernalia, buy records, and documents tending to show residency. The warrant was based on the sworn affidavit of Patrolman J. C. McNeill and the testimony of Officer McNeill and Cathy and Daniel Moog.

Officer McNeill's affidavit states his training, background and experience with marijuana. It further states that on July 24, 1986, Cathy and Daniel Moog, aged 10 and 8 respectively, came to the Ephrata police department with their mother; that they had in their possession a green leafy vegetable matter which they reportedly obtained from 6–year–old Linda Carver; that when the children had spoken with Linda that morning, she had the matter in a small paper cup, and told them it was "pot"; that Linda also told them her mom and dad let her have it and that it was in a glass bowl at 56 Pioneer. Officer McNeill tested the substance and found it was marijuana.

Officer McNeill's affidavit refers to the taped statements of the Moog children as part of the circumstances supporting probable cause for the warrant. Exhibit 2 is the transcript of Cathy Moog's statement. In summary, she told Officer McNeill she had been at home in the morning when her brother came to her and said Linda, their 6–year–old

neighbor who lives at 56 Pioneer Avenue, wanted her outside. When she went out, Linda gave her a green substance she identified as "pot" which she had in a Dixie cup. Cathy described the substance as feeling "like leaves, ground up weeds and grass." Linda told her that her dad said she could get it out of the bowl anytime she wanted it and that she would tell Cathy's mother she was playing with it if Cathy did not take it. Cathy described Linda's house as "greyish–blue" and she stated Linda's dad, Ray Carver, drove a blue Toyota pickup.

Exhibit 3 is the transcript of Daniel Moog's taped statement. In summary, he states Linda Carver had a substance she identified as "pot" and she had cigarettes made from it. He described the substance as "greenish–brown, shredded up into little pieces". She carried it in a cup, like one might find in a bathroom. She told them the substance was in a big bowl in her house and that her dad told her she could get it anytime she wanted. Daniel said Linda's parents are Ray Carver and Glenda, but he did not know Glenda's last name. He further stated the Carvers lived on Pioneer in a blue house and they had an older blue Toyota truck.

The search warrant was executed that day. As a result of evidence seized in that search, Ray Carver and Glenda Ryan were charged with possession of cocaine and possession of marijuana. Pursuant to their motion to suppress the evidence, a hearing was held at which exhibits 1, 2, and 3 were admitted, and Officer McNeill testified the magistrate listened to the tapes of the children's statements before he signed the warrants. Officer McNeill said he did not talk to Linda Carver.

In granting the motion to suppress, the court reasoned:

It seems reasonable that to determine the credibility or incredibility of this particular child, you should see them.

. . .

. . . I am satisfied that we should not authorize searches based on what six–year–old children say per se.

. . .

I think I might have signed that warrant if it were presented to me . . .

But, when you get the benefit of hindsight and an analysis that I am getting here rather than whenever [the magistrate] had to sign that warrant and apply the test to it that you have to, I don't believe it meets the test of reasonableness.

I think that more needed to be done . . .

## A
### USE OF CHILDREN'S STATEMENTS

This court could find no Washington case which addressed whether a tip from a child could be used to support a search warrant. However, the issue was raised in *State v. Adamson,* 136 Ariz. 250, 665 P.2d 972, 979, *cert. denied,* 464 U.S. 865 (1983). There, the defendant contended the affidavit in support of the warrant to search his apartment was insufficient because it was based, in part, on his son's statements. He claimed the statements of children are presumed unreliable. The affidavit included the fact the defendant's 4–year–old son had identified a photograph of his father which was printed in a newspaper and then pointed to a photograph of magnets similar to the ones used to attach an explosive device to the victim's car and said "[a]nd there's my daddy's tools." *Adamson,* 665 P.2d at 980. The court held:

Evidence supporting a finding of probable cause need not meet the standard for admissibility at trial. *Spinelli v. United States, supra; State v. Berge,* 130 Ariz. 135, 634 P.2d 947 (1981); *cf. Aguilar v. Texas,* 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964) (affidavit for search warrant may be based on hearsay information). Thus, even if it were true that Adamson's son was not competent to testify at trial, we believe that the statements made while pointing at the pictures were properly considered together with other information when deciding if probable cause had been established.

*Adamson,* at 258.

As *Adamson* points out, we are dealing here with children's statements used to support a *warrant,* not to support a *conviction.* In establishing probable cause to support a search warrant, "only the probability, and not a

prima facie showing, of criminal activity" is necessary. *Spinelli v. United States, supra,* 393 U.S. at 419. The test of the reliability of a tip from a child informant should be the same as the test for the reliability of tips from other informants.[1] In this state, determination of probable cause to issue a warrant requires establishing both the informant's basis of knowledge and the informant's credibility, *i.e.,* the *Aguilar–Spinelli* test. *State v. Jackson,* 102 Wn.2d 432, 443, 688 P.2d 136 (1984).

## B
### THE AGUILAR–SPINELLI TEST

■ The State must satisfy a 2–prong test to obtain a search warrant. *State v. Jackson, supra* (citing *Aguilar* and *Spinelli*). Under the first prong, facts must be revealed which permit a magistrate to decide whether the informant has a *basis for his allegation* that a certain person has committed a crime. Under the second prong, sufficient facts must be presented for the issuing magistrate to determine either the inherent *credibility* or *reliability* of the informant.

■ Our courts have relaxed the necessary showing of reliability as to citizen informants. *State v. Kennedy,* 107 Wn.2d 1, 8, 726 P.2d 445 (1986); *State v. Huft,* 106 Wn.2d 206, 211, 720 P.2d 838 (1986); *State v. Riley,* 34 Wn. App. 529, 532, 663 P.2d 145 (1983); *State v. Northness,* 20 Wn. App. 551, 556–57, 582 P.2d 546 (1978); *State v. Chatmon,* 9 Wn. App. 741, 746, 515 P.2d 530 (1973). The lesser burden is justified because

---

[1] Mr. Carver contends the magistrate was bound by the case law interpreting RCW 9A.44.120, the child abuse hearsay exception statute, which holds that prior to admitting an out–of–court statement of a child, the court must hold a hearing to determine the reliability of the statement. The statute requires a preliminary determination "'that the time, content, and circumstances of the statement provide sufficient indicia of reliability . . .'" *State v. Ryan,* 103 Wn.2d 165, 170, 691 P.2d 197 (1984). However, the statute and its requirements are not applicable to the use of a child's out–of–court statement in issuing a search warrant. Search warrants often are based upon hearsay statements, while in–court testimony properly may be excluded if it constitutes hearsay and does not fall within a recognized exception to the rule which bars such testimony.

(1) the report of an identified nonprofessional informant who is a victim or eyewitness of a crime substantially minimizes the danger of casual rumor or irresponsible conjecture which accompanies the report of an anonymous professional informant. . . . (2) an identified citizen informant's report does not raise the spectre of the "anonymous troublemaker" which is always present in unidentified citizen informant situations, . . . (3) an identified citizen informant's report is less likely to be colored by self–interest.

*Northness,* at 557. Nevertheless, it remains necessary for the police to ascertain some information which would reasonably support an inference the informant is telling the truth. *Chatmon,* at 746.

Mr. Carver and Ms. Ryan contend the Moog children's statements and the hearsay statements of Linda Carver fail under both prongs. They assert the fact 6–year–old Linda had marijuana and said she got it from her home is not a sufficient basis for alleging they had committed a crime. They also maintain that since the children were not victims of, or eyewitnesses to the alleged crime, the court should not treat them as citizen informants and relax the necessary showing of reliability as to them. In their view, the youth of the children argues against their credibility, and they cite as authority our common experience that children tend toward the fanciful.

First, we hold the statements contain sufficient facts from which the magistrate could decide the children had a basis for their allegation that Mr. Carver and Ms. Ryan kept marijuana in their residence. Linda not only told the Moog children of the presence of marijuana in her house, she also gave them some marijuana. Moreover, a 6–year–old does not have the same access to drug sources as an older child who has more contacts outside his/her home. Hence, the possibility Linda fabricated where she got the marijuana is remote. *Cf. State v. John Doe,* 105 Wn.2d 889, 896, 719 P.2d 554 (1986) (in sexual abuse case, child's recitation of facts generally unknown to children is an indicator of the reliability of the statement). These particular facts, coupled

with the fact Linda made her statements to neighborhood children and the reasonable inference that she had just come from her own home, form a sufficient basis for the allegation that the Carver–Ryan residence contained marijuana.

The second prong—reliability of the informant—is also satisfied. As noted above, the children's ages, alone, do not automatically make them unreliable. And the reasons stated in *Northness* for the lesser burden as to showing the reliability of identified citizen informants apply here. In such situations,

> intrinsic indicia of the informant's reliability may be found in his detailed description of the underlying circumstances of the crime observed or about which he had knowledge. If the underlying circumstances are sufficiently detailed to satisfy the first prong of *Aguilar–Spinelli*, they may themselves provide "built in credibility guides to the informant's reliability," thus fulfilling the second prong as well. The detailed information encompassed in the affidavit's "internal content" attests to the informant's reliability by its very specificity; no independent corroboration is required.

(Citations omitted.) *State v. Northness, supra* at 557. Although the Moog children did not see the marijuana in the Carver–Ryan residence, they separately stated facts, corroborated by the other, which by their specificity and detail attested to their reliability. Further, the fact the children immediately brought the marijuana to the attention of their mother supports an inference they were telling the truth about the circumstances surrounding their acquisition of it. As for Linda, her very young age supports the reliability of her assertion that she obtained the drug at home rather than some other place.[2]

---

[2]The Superior Court indicated it believed that "to determine the credibility . . . of this particular child, you should see them." Defense counsel in oral argument also contended that the magistrate, or at the very least, the police, should have interviewed Linda. However, such a requirement would make it impossible for all practical purposes to obtain a warrant because the police cannot talk to a 6–year–old child without the parents' knowledge. The material determination is

Our holding today should not be interpreted as according blanket approval to warrants based upon double hearsay. Rather, our holding is strictly limited by our conclusion that the facts here satisfied the *Aguilar–Spinelli* test. Particularly, the facts of Linda's age, her proximity to her home when she made the statements, and the corroboration of her statements provided by her actual possession of marijuana serve to support a reasonable inference upon which the magistrate could find probable cause that the Carver–Ryan residence contained marijuana.

The order of the Superior Court which suppressed the evidence is reversed.

GREEN and THOMPSON, JJ., concur.

Review denied by Supreme Court September 1, 1988.

whether the statements satisfy the *Aguilar–Spinelli* test, not whether the police interviewed Linda personally before requesting a warrant.