UNITED STATES of America, Plaintiff,

v.

Bessie Ann WALTERS, Defendant.

Crim. A. No. 714.

United States District Court
W. D. Arkansas,
Hot Springs Division.

May 2, 1961.

---

Charles W. Atkinson, U. S. Atty., James A. Gutensohn, Asst. U. S. Atty., Fort Smith, Ark., for plaintiff.

C. Floyd Huff, Jr., Hot Springs, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

### Statement

A hearing on the motion of the defendant filed herein on January 25, 1961, to suppress the evidence and dismiss the indictment was held April 17, 1961. At the conclusion of the hearing, the court entered an order sustaining the motion and dismissing the indictment.

Because of the interest expressed by various law enforcement officers, this opinion is being filed setting forth the grounds and the reasons announced orally by the court at the conclusion of the hearing.

### Opinion

The indictment charges that the defendant, Bessie Ann Walters, "did possess 50 gallons of distilled spirits, to-wit: whiskey, the immediate containers thereof not having affixed thereto stamps evidencing the payment of the tax due thereon in violation of 26 U.S.C., Secs. 5604(a) (1) and 5205(a) (2)."

26 U.S.C. § 5205(a) (2) provides:

"No person shall transport, possess, buy, sell, or transfer any distilled spirits, unless the immediate container thereof is stamped by a stamp evidencing the determination of the tax or indicating compliance with the provisions of this chapter."

The indictment is sufficient to charge a violation of the statute.

The penalty is prescribed by 26 U.S.C. § 5604(a) (1), which reads as follows:

"Any person who shall (1) transport, possess, buy, sell, or transfer any distilled spirits, required to be stamped under the provisions of section 5205(a) (2), unless the immediate container thereof has affixed thereto a stamp as required by such section * * * shall be fined not more than $10,000 or imprisoned not more than 5 years, or both, for each such offense."

The motion of defendant, in effect, charges:

(1) That the home of the defendant was entered and searched by three police officers of the City of Hot Springs, Arkansas, before daylight between 6:00 and 6:30 a. m. on December 24, 1960; that as a result of said search the police officers found, seized, and took possession of 50 gallons of untaxpaid distilled spirits.

(2) That the place where the distilled spirits were found and seized was the home of the defendant, and had been occupied by her as her residence for a number of years, and that she was in legal possession of the premises at the time the search was made; that the 50 gallons of untaxpaid distilled spirits were her own property.

(3) That the search of the defendant's residence was in violation of defendant's rights against unlawful searches and seizures as guaranteed by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States in that (a) the affidavit for search warrant does not state probable cause and was predicated upon mere suspicion; (b) that the search warrant itself is invalid in that

the affidavit upon which it was predicated did not state nor was it based upon probable cause, but was based upon mere suspicion; (c) that the premises to be searched were not particularly described in either the affidavit for the search warrant or the warrant; that the police officers were merely directed to search for "illegal whisky" concealed at 111 McCafferty in the residence of Bessie Cook in the City of Hot Springs, Garland County, Arkansas; (d) that no person by the name of Bessie Cook lived or resided at 111 McCafferty Street in the City of Hot Springs, Garland County, Arkansas, or had ever lived or resided there within the defendant's knowledge; (e) that neither the affidavit for the search warrant nor the warrant itself particularly described the place to be searched or things to be seized as required by the Fourth Amendment to the Constitution of the United States of America and by federal statute.

(4) That at the time the search and seizure was made, the defendant was not arrested or placed under bond; that she was not arrested upon the charge until Tuesday, January 3, 1961, ten days after the search and seizure; that on that date she was arrested by the city police officers and taken to the City Jail in the City of Hot Springs, at which time the investigators of the Alcohol, Tobacco Tax Unit were called by the said police officers, and the defendant was delivered to the custody of said federal officers who adopted the case, with the result that she was arraigned before Judge M. C. Lewis, Jr., on January 4, who was acting as United States Commissioner, and held to await the action of the grand jury for the Western District of Arkansas.

(5) No return was made upon the search warrant by the police officers and no inventory or statement was filed showing what, if anything, was found and seized as a result of the search.

Amendment Four to the Constitution of the United States provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Rule 41(c) of the Federal Rules of Criminal Procedure, 18 U.S.C., provides that a search warrant shall issue only on affidavit sworn to before the judge or commissioner and establishing the grounds for issuing the warrant. If the judge or commissioner is satisfied that grounds for the application exist, or that there is probable cause to believe that they exist, he shall issue a warrant identifying the property and naming or describing the person or place to be searched. The warrant shall state the grounds or probable cause for its issuance and the names of the persons whose affidavits have been taken in support thereof. The warrant shall direct that it be served in the daytime, but if the affidavits are positive that the property is on the person or in the place to be searched, the warrant may direct that it be served at any time.

Subsection (e) of Rule 41 provides that a person aggrieved by an unlawful search or seizure may move the district court for the district in which the property was seized to suppress for use as evidence anything so obtained on the ground that (1) the property was illegally seized without warrant, or (2) the warrant is insufficient on its face, or (3) the property seized is not that described in the warrant, or (4) that there was not probable cause for believing the existence of the grounds on which the warrant was issued, or (5) that the warrant was illegally executed.

The judge shall receive evidence on any issue of fact necessary to the decision of the motion.

The motion shall be made before trial or hearing unless opportunity therefor did not exist, or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing.

The affidavit upon which the warrant was issued is as follows:

"In the Municipal Court of Hot Springs, Arkansas

"Criminal Division

"State of Arkansas,⎫ Affidavit for
"County of Garland,⎬ Search War-
"City of Hot Springs⎭ rant

"I, Virgil Rogers, do solemnly swear that certain personal property to-wit: Illegal Whiskey, has been concealed at 111 McCafferty and that I do in truth suspect that such property is concealed in the Residence occupied by Bessie Cook in the City of Hot Springs in State aforesaid, and pray a warrant from said Court to search said premises.

"/s/   Virgil E. Rogers

"Subscribed and sworn to before me this 23rd day of December, 1960.

"/s/   M. C. Lewis, Jr.
"Municipal Judge"

The warrant issued upon the affidavit is as follows:

"Search Warrant   Served 12–24–60
"Robberts, Rogers,
Digby, Brooks

"State of Arkansas ⎫ ss.
"County of Garland ⎭

"The State of Arkansas, To Any Sheriff, Coroner, Constable or Policeman in the State:

"Whereas, Complaint has been made on oath, before the undersigned Municipal Court Judge in and for the County of Garland by Virgil Rogers that certain property of _____ to wit: Illegal Whiskey, has been concealed and that the said complainant suspects that such property is concealed in the House occupied by Bessie Cook at 111 McCafferty in said County; and, Whereas, Being satisfied that there is reasonable ground for such suspicion, You Are Therefore Hereby Commanded, To Search the said place above mentioned, where such property is suspected to be concealed, and to bring such property, or any part thereof which may be found, before me, Municipal Court Judge. Hereof fail not, and make return of this writ.

"Given under my hand, this 23rd day of December, 1960.

"/s/   M. C. Lewis, Jr.
"Municipal Court Judge"

It will be noted that the affidavit contains no statement of fact showing probable cause to believe that the person named in the affidavit was in possession of property subject to seizure. The only thing the affiant stated in the affidavit was that he suspected that illegal whiskey was concealed in the residence occupied by Bessie Cook.

The search warrant does not contain any finding of fact showing or tending to show probable cause for the issuance of the warrant. The only statement in the warrant is, "being satisfied that there is reasonable ground for such suspicion, You Are Therefore Hereby Commanded, To Search the said place above mentioned, where such property is suspected to be concealed and to bring such property, or any part thereof which may be found, before me, Municipal Court Judge. Hereof fail not, and make return of this writ."

It should also be noted that the return upon the warrant merely recites that it was "Served 12–24–60", but does not disclose what was found, or if illegal whiskey was found, the quantity thereof and the disposition of the seized property.

The warrant does not direct whether it was to be served in the day time or night time. As a matter of fact, the officers testified that they entered the home and made their search about 7:30 a. m., on December 24, but the defendant testified that at the time they entered her home it was still dark, but the court does not believe it is necessary to make a finding as to when the search was actually made.

At the hearing the Government introduced testimony in an attempt to show that probable cause actually existed for the issuance of the warrant, but, if that were true, the facts which are claimed to constitute probable cause should have been set forth in the affidavit to enable the Municipal Judge to judicially determine whether probable cause in fact existed.

If the search was made in the night time as contended by the defendant, it was an illegal search, since Rule 41(c) provides that the warrant shall direct that it be served in the day time. However, if the affidavit upon which the warrant is issued contains positive statements that the property is on the person or in the place to be searched, the warrant may direct that it be served at any time. Here the affidavit set forth no such facts, but only recited that the affiant suspicioned that illegal whiskey was being concealed in the residence.

■ Regardlesss of when the search was made, the affidavit was insufficient and the insufficiency of the affidavit could not be supplied by the warrant even if the warrant were in proper form.

The officers had no warrant for the arrest of the defendant and did not arrest her. Ten days later, on January 3, 1961, they returned with a warrant of arrest and the defendant was taken by the officers to the Office of the Municipal Judge. The Federal officers were called in and they adopted the case. After the adoption of the case by the Federal authorities, the Municipal Judge, acting as United States Commissioner, held the defendant to await the action of the Federal Grand Jury.

In Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, the court established the rule which excludes in a federal criminal prosecution evidence obtained by federal agents in violation of the defendant's Fourth Amendment rights.

Beginning at the bottom of page 391 of 232 U.S., at page 344 of 34 S.Ct., the court said:

"The effect of the Fourth Amendment is to put the courts of the United States and Federal officials, in the exercise of their power and authority, under limitations and restraints as to the exercise of such power and authority, and to forever secure the people, their persons, houses, papers and effects against all unreasonable searches and seizures under the guise of law. This protection reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all entrusted under our Federal system with the enforcement of the laws. The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizures and enforced confessions, the latter often obtained after subjecting accused persons to unwarranted practices destructive of rights secured by the Federal Constitution, should find no sanction in the judgments of the courts which are charged at all times with the support of the Constitution and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights."

On page 393 of 232 U.S., on page 344 of 34 S.Ct. the court said:

"The efforts of the courts and their officials to bring the guilty to punishment, praiseworthy as they are, are not to be aided by the sacrifice of those great principles established by years of endeavor and suffering which have resulted in their embodiment in the fundamental law of the land. The United States marshal could only have invaded the house of the accused when armed with a warrant issued as required by the Constitution, upon sworn information, and describing with reasonable particularity the thing for which the search was to be made."

■ The rule has now been extended to exclude evidence obtained by state officers during the search which if conducted by federal officers would have violated the defendant's immunity from unreasonable search and seizure.

In Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 1439, 4 L.Ed.2d 1669, the court had before it this question: "May articles obtained as the result of an unreasonable search and seizure by state officers, without involvement of federal officers, be introduced in evidence against a defendant over his timely ob-

jection in a federal criminal trial?" In discussing the question, the court at page 222 of 364 U.S. at page 1446 of 80 S.Ct. said:

"It must always be remembered that what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures."

At page 223 of 364 U.S., at page 1447 of 80 S.Ct. the court quoted from McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, as follows:

" * * * 'a conviction resting on evidence secured through such a flagrant disregard of the procedure which Congress has commanded cannot be allowed to stand without making the courts themselves accomplices in willful disobedience of law.' "

The court further said:

"Even less should the federal courts be accomplices in the willful disobedience of a Constitution they are sworn to uphold.

"For these reasons we hold that evidence obtained by state officers during a search which, if conducted by federal officers, would have violated the defendant's immunity from unreasonable searches and seizures under the Fourth Amendment is inadmissible over the defendant's timely objection in a federal criminal trial. In determining whether there has been an unreasonable search and seizure by state officers, a federal court must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out. The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed."

In referring to the validity of a search of a residence, the court in Agnello v. United States, 269 U.S. 20, at page 32, 46 S.Ct. 4, at page 6, 70 L.Ed. 145, said:

"The protection of the Fourth Amendment extends to all equally—

to those justly suspected or accused, as well as to the innocent. The search of a private dwelling without a warrant is in itself unreasonable and abhorrent to our laws. Congress has never passed an act purporting to authorize the search of a house without a warrant."

On page 33 of 269 U.S., on page 6 of 46 S.Ct., the court said:

"Save in certain cases as incident to arrest, there is no sanction in the decisions of the courts, federal or state, for the search of a private dwelling house without a warrant. Absence of any judicial approval is persuasive authority that it is unlawful (citing authority). Belief, however well founded, that an article sought is concealed in a dwelling house furnishes no justification for a search of that place without a warrant. And such searches are held unlawful notwithstanding facts unquestionably showing probable cause."

In Jones v. United States, 357 U.S. 493, beginning at the bottom of page 497, 78 S.Ct. 1253, at page 1256, 2 L.Ed.2d 1514, the court, said:

"It is settled doctrine that probable cause for belief that certain articles subject to seizure are in a dwelling cannot of itself justify a search without a warrant. Agnello v. United States, 269 U.S. 20, 33 [46 S.Ct. 4, 6, 70 L.Ed. 145]; Taylor v. United States, 286 U.S. 1, 6 [52 S.Ct. 466, 467, 76 L.Ed. 951]. The decisions of this Court have time and again underscored the essential purpose of the Fourth Amendment to shield the citizen from unwarranted intrusions into his privacy. See, e. g., Johnson v. United States, 333 U.S. 10, 14 [68 S.Ct. 367, 92 L.Ed. 436]; McDonald v. United States, 335 U.S. 451, 455 [69 S.Ct. 191, 193, 93 L.Ed. 153]; cf. Giordenello v. United States, decided today, ante, [357 U.S.] p. 480 [78 S.Ct. 1245, 2 L.Ed.2d 1503]. This purpose is realized by Rule 41 of the Federal Rules

of Criminal Procedure, which implements the Fourth Amendment by requiring that an impartial magistrate determine from an affidavit showing probable cause whether information possessed by law-enforcement officers justifies the issuance of a search warrant. Were federal officers free to search without a warrant merely upon probable cause to believe that certain articles were within a home, the provisions of the Fourth Amendment would become empty phrases, and the protection it affords largely nullified."

In McDonald v. United States, 335 U.S. 451, beginning at page 455, 69 S.Ct. 191, at page 193, 93 L.Ed. 153, the court said:

"We are not dealing with formalities. The presence of a search warrant serves a high function. Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was done not to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals. Power is a heady thing; and history shows that the police acting on their own cannot be trusted. And so the Constitution requires a magistrate to pass on the desires of the police before they violate the privacy of the home. We cannot be true to that constitutional requirement and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative."

In Johnson v. United States, 333 U.S. 10, beginning at the bottom of page 13, 68 S.Ct. 367, at page 369, 92 L.Ed. 436, the court said:

"The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. Crime, even in the privacy of one's own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent."

Section 15 of Article 2 of the Constitution of the State of Arkansas provides:

"The right of the people of this State to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized."

It should also be noted that the affidavit and the warrant both recited that "Bessie Cook" lived at the address stated in the affidavit, when as a matter of fact the address stated in the affidavit and in the

warrant was and is the home of the defendant, Bessie Ann Walters, and no one knew her by the name of Bessie Cook.

The court is convinced that the search was unreasonable and invalid, and that is true even under the law of the State of Arkansas, but as held in Elkins v. United States, supra, "the test is one of Federal law, neither enlarged by what one state court may have countenanced nor diminished by what another may have colorably suppressed." [364 U.S. 206, 80 S.Ct. 1447].

Therefore, the motion to suppress the evidence and dismiss the indictment should be sustained, and an order entered accordingly.