[No. 38653.  Department Two.  November 3, 1966.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIAM MALBECK, *Appellant.*[*]

*Victor V. Hoff* (of *Young, Hoff & Regan*), for appellant (Appointed counsel for appeal).

*Charles O. Carroll* and *David W. Soukup* for respondent.

POYHONEN, J.[†]—Appellant was charged by information with the crime of grand larceny by possession of property of a value in excess of $75 belonging to James R. Hughes, with knowledge that the property had been stolen. RCW 9.54.010(5). At the trial appellant did not testify or offer any defense. Following a jury verdict of guilty, he was sentenced to not more than 15 years. Appeal followed.

One of appellant's three assignments of error is that the trial court erred in denying a motion to suppress evidence

[*]Reported in 419 P.2d 805.

[†]Judge Poyhonen is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

based on the contention that a search warrant was unlawfully and improperly issued.

The trial court found that when Deputy Sheriff Randall, on June 17, 1965, applied to a justice of the peace for a warrant to search appellant's rented apartment unit, he was possessed of the following information:

1. That entry had been made on June 14, 1965, into premises occupied by one James R. Hughes at 119 S. W. 148th, Seattle, in the Burien area, by forcing open a door;

2. That in the burglary certain items of personal property were reported to have been taken: Kenwood KT-10 stereo tuner, German made hunting knife, 21-inch Packard Bell television set, Sunbeam toaster, deep fryer, large white ash tray, Webcor four-speed record player, six record albums, Camfield automatic coffee pot, Crossman air pistol, pump action pellet gun, Sears Roebuck credit card, personalized bank checks of James R. Hughes;

3. That the serial number of the missing stereo tuner was 50100375;

4. That Hughes was positive that he could identify all of the stolen property;

5. That appellant was a tenant occupant of No. 5 apartment at 25040 Pacific Highway South;

6. That a reliable informant, who had previously given him truthful information regarding criminal activities, claimed to have overheard appellant say that he had the hunting knife in his possession at his apartment, and claimed to have seen the other missing items at the appellant's apartment, No. 5, 25040 Pacific Highway South on the occasion of parties held in this apartment "that the informant was at."

Deputy Randall presented to the justice of the peace an unsigned affidavit for a search warrant. He testified that he was sworn and was examined under oath by the justice with respect to the affidavit form's contents; that the justice read the affidavit form and then asked him questions regarding the appellant's name on the document, as to the past reliability of the informant, as to how long the officer had dealt with the informant, how he had obtained the

serial number of the stereo tuner, as to the location where the stolen property was believed to be kept, and as to the informant's knowledge of the area of the burglary. He further testified that each allegation and statement contained in the unsigned affidavit form was repeated and stated under oath to the justice.

The justice executed an affidavit in part as follows:

> [T]hat said Leonard Randall was then and there sworn on oath by affiant, and then and there examined by affiant with respect to the affidavit's contents and said Leonard Randall's belief that said information was true, accurate, and complete; that based on the written affidavit information and said Leonard Randall's testimony under oath, affiant found probable cause to issue a search warrant as requested;

The trial court, after offering both the prosecution and the appellant an opportunity to call the justice as a witness, which each declined, ruled that the issuance of the search warrant complied with all statutory and constitutional requirements. We agree.

■ A signed affidavit for a search warrant is not required. The fourth amendment to the United States Constitution requires only that warrants issue upon probable cause supported by oath or affirmation. RCW 10.79.010 requires only that the application for a search warrant be under oath and that the justice find reasonable cause for the officer's belief.

Appellant argues that, while courts have generally permitted the issuance of search warrants on the basis of hearsay statements of undisclosed informants, this violates the fourth amendment of the United States Constitution, and that the requirement of oath or affirmation is not fulfilled by hearsay only, and cites *Aguilar v. Texas*, 378 U.S. 108, 12 L. Ed. 2d 723, 84 Sup. Ct. 1509 (1964). *Aguilar* does not contain such a sweeping indictment of the use of hearsay and is distinguishable from the instant case.

In *Aguilar*, the affidavit for search warrant stated: "Affiants have received reliable information from a credible person and do believe that heroin . . . are being kept

at the above described premises . . . ." The facts which the informant had stated to the officer were not set forth in the affidavit. The following language from *Aguilar* is significant, p. 113:

Here the "mere conclusion" that petitioner possessed narcotics was not even that of the affiant himself; it was that of an unidentified informant. The affidavit here not only "contains no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein," it does not even contain an "affirmative allegation" that the affiant's unidentified source "spoke with personal knowledge." For all that appears, the source here merely suspected, believed or concluded that there were narcotics in petitioner's possession. The magistrate here certainly could not "judge for himself the persuasiveness of the facts relied on . . . to show probable cause."

Search warrants issued on the basis of information received from an unidentified informant were upheld in *Rugendorf v. United States*, 376 U.S. 528, 11 L. Ed. 2d 887, 84 Sup. Ct. 825 (1964); in *Jones v. United States*, 362 U.S. 257, 4 L. Ed. 2d 697, 80 Sup. Ct. 725, 78 A.L.R. 2d 233 (1960).

█ A second of appellant's assignments of error is that the trial court denied his motion, timely made prior to trial, to require the prosecution to disclose the identity of the informant. Appellant's affidavit in support of his motion stated only that "This informant may have information material to the defense of this case." As late as in argument before this court, the appellant conceded that he does not know whether disclosure of the informant would have helped or hurt his defense. Appellant's affidavit does not indicate that it was believed or even suspected that disclosure would be material to the defense. Appellant did not request the name of the informant as a possible defense witness. There was not even a suggestion that he might present a defense of entrapment, in which case the testimony of the informant would be a material and relevant factor in that defense, a situation which existed in *State v. Driscoll*, 61 Wn.2d 533, 379 P.2d 206 (1963). An accused is required to make at least some showing that the circum-

stances require disclosure of the identity of the informant. *State v. Massey,* 68 Wn.2d 88, 411 P.2d 422 (1966).

The prosecution did not file a counter-affidavit showing reasons why identity should not be disclosed. Where the appellant made no showing at all, such a counter-affidavit was not necessary. But where an accused makes some showing of a need for disclosure, the trial court should know the prosecution's reasons for resisting disclosure if the court is to perform intelligently its judicial function as set forth in the language of *Roviaro v. United States,* 353 U.S. 53, 62, 1 L. Ed. 2d 639, 77 Sup. Ct. 623 (1957):

> The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

Appellant's third argument is that the evidence was insufficient to support a jury verdict of guilty. The jury, from the evidence, had a right to find: that on May 29, 1965, the appellant rented apartment No. 5 at 25040 Pacific Highway South and that he continued to occupy the same through June 20, 1965; that so far as is known, he was the sole occupant of this apartment at all times; that he had been seen about the premises by Mrs. Eudy, manager of the restaurant immediately in front of the apartment units, and by Mr. Romero, the landlord, who had seen appellant come and go on occasions; that when appellant rented the apartment on May 29, 1965, he confessed poverty and made only a $15 payment on an advance monthly rental of $55, followed by a $10 payment the following day and a $15 payment a week or 10 days later; that all of the items taken in the Burien burglary of June 14, 1965, were found 3 days later in appellant's apartment, with the exception of the Sears Roebuck credit card, expired, and Mr. Hughes's personalized checks; that these items belonged to Mr. Hughes, and that their reasonable value when taken was about $800.

We find sufficient evidence and reasonable inferences to be drawn therefrom to support the jury verdict of guilty.

Judgment and sentence affirmed.

DONWORTH, FINLEY, WEAVER, and HAMILTON, JJ., concur.