[No. 38975    En Banc.    December 28, 1967.]

THE STATE OF WASHINGTON, *Respondent*, v. IRVING JAMES WALCOTT, *Appellant*.*

*Reported in 435 P.2d 994.

*Robert L. Butler* and *Arnold J. Barer,* for appellant.

*Charles O. Carroll, Thomas A. Stang,* and *Bruce W. Rudeen,* for respondent.

HUNTER, J.—This is an appeal by the defendant (appellant), Irving James Walcott, from a conviction for the possession of marijuana. The assignment of error upon which the defendant primarily relies is to the trial court's denial of the defendant's motion to suppress certain evidence seized pursuant to a search warrant.

On November 5, 1965, at approximately 5 o'clock in the afternoon, King County Deputy Prosecuting Attorney Thomas A. Stang filed complaints for search warrants in the Seattle District Justice Court of magistrate Evangeline Starr. Seattle police detectives R. W. Waitt and A. L. Fawcett were present at this time.

In addition to the allegations of the respective complaints, oral testimony with reference to the propriety of issuing the search warrants was received by the magistrate.

She determined that probable cause had been established for the issuance of search warrants for five locations in Seattle. In this case we are only called upon to determine the legality of search warrant No. 0297 issued by the magistrate for a search of the premises located at 5514½ - 11th Ave. N.E., Seattle.

The complaint for search warrant No. 0297 was signed by Detective Waitt. The pertinent portion of the complaint reads as follows:

[T]hat affiant's belief is based upon the following facts and circumstances: Received information from informant who was present when the marihuana was purchased in Mexico and brought to Seattle. Informant was present when the marihuana was brought to the house and has seen the marihuana in the house this date.

The informant was at the hearing before the magistrate. The police officers did not disclose her name and the state did not elect to have her testify under oath. The informant was not previously known to the officers and they had had no past experience with her. However, the officers testified under oath as to their testing of the reliability of her statements concerning the information furnished. The court questioned the informant as to the truth of statements she made to the officers. She affirmed the statements.

The residence at 5514½ - 11th Ave. N.E. was searched at approximately 9 p.m., November 5, and about 30 pounds of marijuana were seized. Defendant Walcott resided at this address and was present at the time of the search. He was arrested after the discovery of the marijuana. The defendant prior to his trial moved to suppress the evidence seized, challenging the finding of probable cause for issuance of the search warrant.

In view of the fact that no written record was made of the hearing before the magistrate, affidavits of magistrate Starr, Deputy Prosecuting Attorney Stang and detectives Waitt and Fawcett were obtained. These affidavits purport to relate what occurred at the hearing on probable cause

for issuance of the search warrants. They were considered on the motion to suppress evidence. A special hearing was then ordered by the trial judge in order to provide persons arrested in the aftermath of the searches an opportunity to examine the magistrate, the deputy prosecuting attorney and the detectives as to the contents of the affidavits and the proceedings before the magistrate. At this special hearing, the magistrate and the two detectives were examined and this testimony was transcribed. On February 3, 1966, based upon the affidavits and the transcript of the special hearing, the defendant's motion to suppress the evidence was denied.

The defendant contends that the evidence adduced before the magistrate did not show probable cause for the issuance of search warrant No. 0297 as a matter of law under the fourth amendment to the United States Constitution.

In considering this contention it must be kept in mind that the question of whether probable cause justified the issuance of a search warrant should not be viewed in a hypertechnical manner. The United States Supreme Court emphasized this in *United States v. Ventresca*, 380 U. S. 102, 13 L. Ed. 2d 684, 85 Sup. Ct. 741 (1965), at 109:

> [W]hen a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a common-sense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, *the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.* (Citing case.) (Italics ours.)

In *Aguilar v. Texas*, 378 U. S. 108, 111, 12 L. Ed. 2d 723, 84 Sup. Ct. 1509 (1964), the court explained:

> Thus, when a search is based upon a magistrate's, rather than a police officer's, determination of probable cause, the reviewing courts will accept evidence of a less "judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant," *ibid.*, and will sustain the judicial determina-

tion so long as "there was substantial basis for [the magistrate] to conclude that narcotics were probably present . . . ."

■ In this case, the crucial factual issue is whether the information furnished by the unidentified informant was sufficiently reliable to support the magistrate's determination of probable cause for the issuance of the warrant authorizing the search of the premises where defendant Walcott resided. The rule for testing the sufficiency of such information was stated in *Aguilar, supra*, at 114:

> [T]he magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, . . . was "credible" or his information "reliable."

The evidence in the instant case to be considered in light of these rules is as follows:

Prior to the application for a search warrant, the unidentified informant voluntarily told officers Fawcett and Waitt of the Seattle Police Department that she had been present when a large quantity of marijuana was purchased in Mexico and brought to 5514½ - 11th Ave. N.E. in the University District. She related that she had visited five addresses in the University District where she had seen marijuana and she gave the names of some of the persons living at these locations. Officers Fawcett and Waitt, in company with the informant, checked these addresses and found them to be identical with addresses which had been the subject of prior investigations concerning suspected trafficking in narcotics by persons who included those named by the informant. The officers repeated this information under oath to the magistrate, at the time of application for search warrants for these premises.

At the hearing on the defendant's pretrial motion for suppression of the evidence, the information disclosed by officers Fawcett and Waitt to the magistrate was set forth in their affidavit as follows:

That on November 5, 1965 in the afternoon, a person came into the Narcotics Detail office and stated that this individual had some information to give us regarding the location of narcotics, LSD-25 and marihuana, in the University District in Seattle; that the informant was interviewed by both your affiants; that your affiants, after the interview contacted Deputy Prosecutor Thomas A. Stang for assistance in obtaining search warrants for the places mentioned by the informant; that Detective Fawcett went out with the informant to check the addresses of each of the places mentioned by the informant; that when Detective Fawcett and the informant returned, all went to the prosecutor's office to discuss getting a search warrant; that after a discussion, the complaints were prepared and Deputy Stang, together with the informant and your affiants, went to Judge Starr's Court to ask for the search warrant;

That your affiants were put under oath and Detective R. W. Waitt signed the various complaints; that your affiants then explained to Judge Starr what additional information your affiants knew about each of the addresses as follows:

Regarding 2303 N.E. 65th, Seattle, Washington, your affiants stated that this was the residence of Al Moss who had been suspected to be trafficking in dangerous drugs and narcotic drugs; that this information was obtained from reliable informants; that the house had been observed on previous occasions and suspected users of narcotics had been seen entering and leaving the premises;

Regarding 4243 11th N.E., Seattle, Washington, your affiants advised that the house was occupied by Paul Davis; that your affiants had received information from other reliable informants that Paul Davis was trafficking in narcotic and dangerous drugs; that Paul Davis drove a Meteor Hearse and was using his Hearse to carry narcotics;

Regarding 5514½ 11th N.E., Seattle, Washington, your affiants advised that this was the residence of Irving Walcott, a partner in the Eigerwand Coffee House in the University District where many of the suspected drug users in the University District congregate; that Walcott and the Eigerwand had been suspected as a source of marihuana and dangerous drugs in the District since March of 1965 when it came to the attention of the Seat-

tle Police Department from informants that both were involved;

Regarding 3818 - 4th N.E., Seattle, Washington, your affiants advised that one of the residents at this address was Peter Christofferson who had previously been arrested on suspicion of a narcotics offense involving marihuana, although not charged; that officers had observed suspected narcotics users in the past month entering and leaving the premises; . . . .

The magistrate submitted an affidavit at the same hearing containing the following:

That on the 5th day of November, 1965, she was asked by the Seattle Police Department and the King County Prosecutor's Office to issue search warrants for the following addresses located in Seattle, King County, Washington: 5514½ - 11th Avenue N.E., 102 Broadway East, 2303 N.E. 65th, 4243 - 11th Ave. N.E. and 3818 - 4th Avenue N.E.;

. . . .

That prior to the issuance of the search warrants both Detective A. W. Fawcett and Detective R. W. Waitt were sworn on oath and gave testimony under the questioning of Mr. Stang and the undersigned; that the testimony elicited revealed that the informant was present when a large quantity of marihuana was purchased in Mexico; that the purchasers then proceeded by airplane to California, specifically the Berkeley area where some of the marihuana was left and about 600 capsules of a drug commonly known as LSD was purchased; that the party then came to the Seattle area with marihuana and that most of this marihuana was presently in a suitcase at 5514½ - 11th Avenue N.E.; that the informant on the 4th day of November, 1965, had visited all the above addresses mentioned and seen quantities of marihuana at each of the places as well as drugs classified as dangerous drugs; that the detectives were asked specifically what information the Seattle Police Department Narcotics Detail had about each of the above listed addresses. As the warrants were each individually considered, the detectives explained who lived at the premises and who was seen entering and leaving the premises during the recent weeks; that although your affiant cannot remember specifically any names, the police reported that these were the same persons that the department had had trouble

with in the University District Area of Seattle and each of them has been suspected of dealing with and using narcotic drugs; that the department had received reliable information from other reliable informants that these persons were involved in the unlawful drug activity in the university area;

Your affiant was introduced to the informant, although the name was withheld, and although not put under oath the informant was asked whether or not the informant had seen narcotics, specifically marihuana at the above addresses as per the statements of the detectives in their affidavits; that the informant replied, "yes"; . . . .

Considering the above affidavits in their entirety, which the trial court believed, we are satisfied that the sufficiency and reliability of the information given by the unidentified informant was adequate under the requirements established by *Aguilar, supra,* to justify the issuance of the warrants. (1) The underlying circumstances upon which the informant based her report were fully disclosed to the magistrate, and these circumstances included personal observation of the narcotics at the locations named. (2) The underlying circumstance demonstrating that the informant's information was reliable was the police officers' comparison of the names and addresses given by the informant with prior reliable information in possession of the police concerning persons and locations suspected of being involved in narcotics violations, and the coincidences disclosed by this comparison.

In every instance, the residents of the premises were suspicioned of trafficking in narcotics by reason of prior investigations of the officers. Some of the same individuals asserted to have been seen at these premises by the informant were these persons. This justified reliance on the reliability of the informant's information.

It is contended, however, that the prior information that the defendant Walcott was suspected of trafficking in marijuana and dangerous drugs was furnished by untested informants. This is not supported by the record. The officers' affidavit does not refer to these informants as untested or unreliable, and the magistrate's affidavit conclusively shows

that she was told by the officers that these informants *were* reliable. That portion of the affidavit reads:

As the warrants were each individually considered, the detectives explained who lived at the premises and who was seen entering and leaving the premises during the recent weeks; that although your affiant cannot remember specifically any names, the police reported that these were the same persons that the department had had trouble with in the University District Area of Seattle and each of them has been suspected of dealing with and using narcotic drugs; that the department had received *reliable information from other reliable informants that these persons were involved in the unlawful drug activity in the university area;* . . . . (Italics ours.)

If doubts are entertained as to the sufficiency of the information in this record to show probable cause justifying the issuance of the challenged search warrant, these must be resolved in favor of the validity of the warrant. *United States v. Ventresca, supra; Aguilar v. Texas, supra.*

■ The defendant contends, however, that the fourth amendment to the United States Constitution requires that the complaint or affidavits must show probable cause on their face before a search warrant may issue. The defendant concedes that the law of this state requires only an oath or affirmation to support a finding of probable cause. *State v. Malbeck,* 69 Wn.2d 695, 419 P.2d 805 (1966). He argues, however, that this state should follow the federal rule which requires that sworn statements in support of an application for a search warrant be reduced to writing.

Although the federal practice, which results in making and preserving a contemporaneous record of the proceedings before the magistrate, may be preferable; however, it is not a constitutional requirement under the Fourth Amendment. We adhere to our ruling in *Malbeck* and the cases cited therein.

The defendant further contends the evidence seized under the search warrant at 5514½ - 11th Ave. N. E. was not in his possession, as it was not in the room he occupied; and that the remainder of the dwelling was not under his dominion or control. The evidence as to his control of the

premises was in dispute. But there was substantial evidence in the record, which the jury was entitled to believe,. that the defendant was in charge of the entire premises in the absence of a Miss Leaf, who at the time of the seizure of the evidence, was in California. This contention is therefore without merit.

■ The defendant further contends the trial court erred in giving instruction No. 4, on the subject of constructive possession. This contention is also without merit, because the instruction correctly defined constructive possession as a person having dominion and control over the property alleged to be possessed. See *State v. Spillman,* 110 Wash. 662, 188 Pac. 915 (1920); *State v. Parent,* 123 Wash. 624, 212 Pac. 1061 (1923); *State v. Johnson,* 129 Wash. 62, 224 Pac. 602 (1924).

■ The defendant contends the court erred in failing to give his proposed instructions to the effect that the state must prove that the defendant knew of the existence of any marijuana found in his possession. The law of this state is to the contrary. Mere proof of possession is sufficient, absent a showing by the defendant that his possession was unwitting, authorized by law, acquired in a lawful manner, or otherwise excusable under the statute. *State v. Henker,* 50 Wn.2d 809, 314 P.2d 645 (1957); *State v. Mantell,* 71 Wn.2d 768, 430 P.2d 980 (1967).

We are satisfied the defendant received a fair trial in this case. The judgment of conviction on the verdict is affirmed.

FINLEY, C. J., HILL, WEAVER, ROSELLINI, HAMILTON, HALE, and NEILL, JJ., concur.

DONWORTH, J. (dissenting)—In my opinion the majority, in its effort to sustain the validity of the search warrant issued in this case, overlooks the vital issue (alluded to by appellant in his brief, and urged before this court in oral argument) which requires that appellant's conviction be reversed. I, therefore, respectfully dissent.

The requirements for the issuance of search warrants is governed by the fourth amendment to the United States Constitution, which provides, in part, that:

[N]o warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The fourteenth amendment to the United States Constitution provides, in part:

No state shall . . . deprive any person of life, liberty, or property, without due process of law; . . . .

The Fourth Amendment is applicable to this state through the Fourteenth. *Mapp v. Ohio,* 367 U. S. 643, 6 L. Ed. 2d 1081, 81 Sup. Ct. 1684 (1961); *Ker v. California,* 374 U. S. 23, 10 L. Ed. 2d 726, 83 Sup. Ct. 1623 (1963).

In addition, article 1, section 7, of the Constitution of Washington provides:

No person shall be disturbed in his private affairs, or his home invaded, without authority of law.

It has been held that, although this latter provision differs very slightly in language from the fourth amendment to the United States Constitution, the two provisions are identical in purpose and substance. *State v. Miles,* 29 Wn.2d 921, 190 P.2d 740 (1948); *Seattle v. See,* 67 Wn.2d 475, 408 P.2d 262 (1965), *rev'd on other grounds,* 387 U. S. 541, 18 L. Ed. 2d 943, 87 Sup. Ct. 1737 (1967).

In *Aguilar v. Texas,* 378 U. S. 108, 114, 12 L. Ed. 2d 723, 84 Sup. Ct. 1509 (1964), the requirements of an application for a search warrant based, as in the present case, upon hearsay information, which are necessary to meet the requirements of the fourth and fourteenth amendments to the United States Constitution, were set forth as follows:

Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, *Jones v. United States,* 362 U. S. 257, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, *and some of the underlying circumstances from which the officer concluded that the informant,* whose identity need not be disclosed, see *Rugendorf v. United States,* 376

U. S. 528, *was "credible" or his information "reliable."*[1] Otherwise, "the inferences from the facts which lead to the complaint" will be drawn not "by a neutral and detached magistrate," as the Constitution requires, but instead, by a police officer "engaged in the often competitive enterprise of ferreting out crime," *Giordenello v. United States, supra* [357 U. S. 480, 2 L. Ed. 2d 1503, 78 Sup. Ct. 1245], at 486; *Johnson v. United States, supra* [333 U. S. 10, 92 L. Ed. 436, 68 Sup. Ct. 367], at 14, or, as in this case, by an unidentified informant. (Footnote omitted.) (Italics mine.)

In this case, the written complaint (set forth in substance in the majority opinion at page 961), when considered alone, clearly fails to state sufficient probable cause for the issuance of a search warrant. The magistrate is not informed thereby of any of the "underlying circumstances from which the officer concluded that the informant . . . was 'credible' or . . . [her] information 'reliable.' "[2]

It is only by the consideration of the written complaint, together with the affidavits signed by Detectives Waitt and Fawcett, Justice of the Peace Evangeline Starr, and Deputy Prosecutor Stang, which were prepared after a motion to suppress had been interposed by appellant, that the trial court and this court were and are able to find any semblance of probable cause to support the issuance of the search warrants in this case.

In *Aguilar v. Texas, supra,* the Supreme Court stated, in a footnote at page 109 of the opinion, that:

It is elementary that in passing on the validity of a warrant, the reviewing court may consider *only* information brought to the magistrate's attention.

---

[1]Justice of the Peace Starr testified at the superior court hearing, referred to on page 949 of the majority opinion, as follows: "Q. Well, what did the police tell you that made you believe that she [the informant] was a person entitled to be believed? A. *Nothing.* Q. What did Mr. Stang tell you that made you believe she was entitled to be believed? A. Nothing. I relief [*sic*] upon my observations." (Italics mine.)

[2]The informant, under oath at the hearing on the motion to suppress, denied having given information to the officers relating to three of the five addresses, and further *denied having any knowledge* at all regarding those three addresses.

Appellant incorrectly contends that such requirement is met only where consideration is limited to the face of the written complaint or affidavit for search warrant. This is the net effect of Fed. R. Crim. P. 41, 18 U.S.C.A., which is referred to in the majority opinion at page 955.

Rule 41 provides, in part:

(c) Issuance and contents. A warrant shall issue only on affidavit sworn to before the judge or commissioner and establishing the grounds for issuing the warrant.

It has been held that, under this rule, "affidavit" refers to a sworn statement in *writing,* and that, if sworn information was presented to the commissioner other than that contained in affidavits, such information could not be considered by him or by the reviewing court on motion for the return of property seized and to suppress such property for use as evidence. *United States v. Birrell,* 242 F. Supp. 191 (S.D. N.Y. 1965); *Rosencranz v. United States,* 356 F.2d 310 (1st Cir. 1966); *United States v. Walters,* 193 F. Supp. 788 (W.D. Ark. 1961). I agree, however, that this federal rule of criminal procedure is not applicable to criminal cases in this state, as is correctly pointed out in the majority opinion.

In this state, the magistrate is not limited to the written complaint for search warrant in determining the existence of probable cause. In *Ladd v. Miles,* 171 Wash. 44, 49, 17 P.2d 875 (1932), we said:

That all the facts going to show probable cause need not be stated in the affidavit or complaint, seems to be established by our own cases of *State ex rel. Hodge v. Gordon,* 95 Wash. 289, 163 Pac. 772; *State v. Voelker,* 137 Wash. 156, 242 Pac. 6, and *State v. Noah,* 150 Wash. 187, 272 Pac. 729; . . . .

And, in *State v. Malbeck,* 69 Wn.2d 695, 419 P.2d 805 (1966), it was held that a signed affidavit for a search warrant was not required, so long as the information contained in the unsigned document constituting probable cause was stated under oath.

However, even though the issuing magistrate is not limited to a consideration of the written complaint or affidavit

under the law in this state (as he would be under Rule 41), but may consider oral testimony and such other evidence as may be presented to him at the time the warrants are sought, the question is whether or not there must be *some* form of *contemporaneous record* made of such evidence.

As appellant points out in his brief, in contending that Rule 41 should be applied:

> The problem created by not requiring a writing is that a "swearing contest" then results as to what occurred before the magistrate.

> Since no person is present before the magistrate except the police officer complainant a defendant is faced with a "chamber of mirrors" or "selective rememberance" problem in determining whether the magistrate actually had probable cause to issue the warrant.

> The present rule allows the officers seeking the warrant to file affidavits as fast as the defendant can raise omissions thus precluding any appellate regulation of whether the magistrate acted properly in granting the complaint.

Unfortunately, there is a dearth of authority on the question of whether, in the absence of specific statutory requirement of a contemporaneous record or language in a state constitution which requires such a record, due process requires such a record. The reason for such a hiatus is obvious since in the federal courts, and in most states, when the question has arisen, such statutory or constitutional requirement does, in fact, exist.

My research has disclosed no authority in this state specifically requiring or not requiring some contemporaneous record. The question seems one of first impression in this court.

One state, Wisconsin, has considered the question absent specific statutory authority. In *Glodowski v. State,* 196 Wis. 265, 271, 220 N. W. 227 (1928), the Wisconsin Supreme Court stated that:

> It is an anomaly in judicial procedure to attempt to review the judicial act of a magistrate issuing a search warrant upon a record made up wholly or partially by oral testimony taken in the reviewing court long after

the search warrant was issued. Judicial action must be reviewed upon the record made at or before the time that the judicial act was performed. The validity of judicial action cannot be made to depend upon the facts recalled by fallible human memory at a time somewhat removed from that when the judicial determination was made. This record of the facts presented to the magistrate need take no particular form. The record may consist of the sworn complaint, of affidavits, or of sworn testimony taken in shorthand and later filed, or of testimony reduced to longhand and filed, or of a combination of all these forms of proof. The form is immaterial. The essential thing is that proof be reduced to permanent form and made a part of the record which may be transmitted to the reviewing court.

Without some such requirement, there is no reliable way that a reviewing court can determine whether the evidence before the magistrate at the time the warrants issued complied with the constitutional requirements as applied in *Mapp v. Ohio, supra, Ker v. California, supra,* and *Aguilar v. Texas, supra.* Such a requirement seems to me to be imperative.

I would note in addition to the above that, even considering the attempts to recreate the justice court proceedings as valid, the subsequent affidavits introduced, together with the record from the justice court and testimony elicited at the superior court hearing, fail, in my opinion, to establish that a sufficient showing of probable cause was made before the issuing magistrate to justify her issuance of warrant No. 0297.

In *State v. McClung,* 66 Wn.2d 654, 659, 404 P.2d 460 (1965), we quoted with approval from *State v. Bantam,* 163 Wash. 598, 600, 1 P.2d 861 (1931), as follows:

[M]ere anonymous information, *unsupported by other facts then within the knowledge of the officer or learned by subsequent investigation,* is not of itself sufficient to constitute reasonable and probable cause. (Italics mine.)

See, also, *In re Little v. Rhay,* 68 Wn.2d 353, 357, 413 P.2d 15 (1966).

Turning to the affidavit of the officers, Fawcett and Waitt, which purportedly reflects the information which was presented to the magistrate at the time the search warrants were sought, we find the statement:

Regarding 5514½ 11th N. E., Seattle, Washington, your affiants advised that this was the residence of Irving Walcott, a partner in the Eigerwand Coffee House in the University District where many of the suspected drug users in the University District congregate; that Walcott and the Eigerwand had been suspected as a source of marihuana and dangerous drugs in the District since March of 1965 when it came to the attention of the Seattle Police Department from informants that both were involved.

I cannot agree with the majority that this information, if given to the magistrate at the time the warrants issued, fulfills the second requirement of *Aguilar, supra.*

Certainly, the fact that a man's place of business is frequented by *suspected* drug users cannot constitute corroboration for information from an otherwise untested and unknown informant, sufficient to fulfill the constitutional requirements of *Aguilar, supra,* and to justify the issuance of a search warrant authorizing an invasion of that man's home. Such would constitute a flagrant application of the odious doctrine of "guilt by association."

Secondly, no basis is given for the police suspicion that appellant and the Eigerwand Coffee House were a source of marijuana and dangerous drugs other than that, in March, 1965, the police received some unspecified information "from informants that both were involved." Such informants are not identified, nor do the officers even allege that they were "reliable."

It is not sufficient that the officers do not refer to informants as "untested or unreliable" (see majority opinion, page 966), but rather it is necessary that the state establish the informant's reliability. *Aguilar v. Texas, supra.*

Finally, the statement in the majority opinion that "the magistrate's affidavit conclusively shows that she was told by the officers that *these* [italics mine] informants *were* reliable," is simply incorrect.

During the hearing in superior court, referred to on page 961 of the majority opinion. Justice of the Peace Starr testified as follows:

Q. They [the officers] talked about other informants with respect to that address [5514½ 11th N. E.]? A. I couldn't say if they did.

And later during the same hearing she testified as follows:

Q. . . . Did the officers tell you who those informants were, these informants of March, 1965? A. No. Q. They didn't tell you. Did they tell you anything about these informants? Did they tell you their age, whether they were narcotics users themselves? A. I am sure they didn't. I mean, that is my recollection. Q. Based upon your recollection can you tell me anything about those informants? A. They may have given some information about those informants. Q. What information was that? A. I can't recall. Q. So for the purposes here today you can't remember any information given to you about those informants. If I were to ask you to describe those informants and tell me about those informants, you would have to say I don't know? A. If you would refresh my recollection I probably would recall. Q. I can't refresh your recollection for the simple reason I wasn't present there this day and there was no record kept and this is one of the problems that we have here.

At the time the detectives appeared before Justice of the Peace Starr, five separate complaints were presented, upon the basis of which five separate search warrants were sought by the officers, one for each of five separate addresses. We are concerned with only one of those addresses in this case, 5514½ - 11th N.E., where appellant Walcott resided.

The statement contained in the portion of the magistrate's affidavit quoted in the majority opinion at page 967 does not relate to 5514½ - 11th N.E., nor to any specific address.[3]

_____

[3]If the magistrate's statement can be rationally construed to relate to any specific address, it must necessarily (if it is to be read consistent with the version offered in the affidavits of the police officers) relate to 2303 N. E. 65th and 4243 11th N. E. Regarding these two addresses, the officers assert in their affidavit that information was received from

I am unable to find in the record any support for the assertion in the majority opinion that the magistrate's affidavit "conclusively" shows that she was told by the officers that the informants of March, 1965 were reliable.

In summary, the written complaint for search warrant No. 0297, considered alone, was insufficient to justify the issuance of the search warrant in question. The insufficient, written complaints, together with the warrants themselves and the return thereon, constituted the entire record of the evidence which was before the issuing magistrate. The state contends that the record could have reflected more, but the fact remains that it did not.

Two months after the warrants were issued and the dwelling house of appellant was invaded and searched by the police and evidence was seized upon which the conviction of appellant is based, motions to suppress were interposed by appellant. The state then, for the first time, sought to "fill the gaps" in the insufficient, written record made before the magistrate, with affidavits based upon affiant's memory of what had occurred at the time the search warrants were issued. The consideration of these subsequent affidavits by the trial court, and the consequent denial of appellant's motion to suppress, in my opinion, constituted a denial of due process requiring a reversal of appellant's conviction.

However, even if the anomaly proposed by the majority opinion is to now be adopted as the rule in this state, it is clear, from the recreated record of the proceedings before the issuing magistrate, that there was not a showing of probable cause sufficient to satisfy the constitutional standards set forth by the United States Supreme Court in *Aguilar, supra,* at the time the warrants issued. No credible basis was presented for the officers' reliance on the word of the anonymous informant.

---

"reliable" informants. See majority opinion, page 964. There is simply no basis for contending that it related specifically to 5514-1/2 11th N. E., let alone that it "conclusively" establishes that information as to that specific address came from "reliable" informants.

The warrant having been improperly issued, the conviction of appellant, which rests on the evidence unlawfully seized pursuant thereto, must be reversed, and appellant's sentence vacated. I would so order.

February 13, 1968. Petition for rehearing denied.